S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**KEMP L. STRICKLAND, OSB #96118**
Assistant United States Attorney
Kemp.Strickland@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:14-CR-00073-JO** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **MICHAEL JOSEPH KELLY,** | |
| **Defendant.** | **Sentencing Date: November 18, 2014 at 10:00 a.m.** |

The United States of America, by S. Amanda Marshall, United States Attorney for the

District of Oregon, through Kemp L. Strickland, Assistant United States Attorney, respectfully

submits the Government's Sentencing Memorandum for the Court's consideration.  The

government agrees with the factual findings and guideline calculations as set forth in the Pre-

Sentence Report (PSR).  The only issue between the parties is whether defendant should be

sentenced at the low end of the advisory guidelines (100 months) or down to the mandatory

minimum 5 year prison sentence as required.  The facts of the offense along with defendant's

criminal history, support the Court following the recommendations of the PSR writer and

sentencing defendant to 100 months in prison followed by 3 years of supervised release.

Pursuant to the plea agreement, the government further recommends that the Court run the

sentence in supervised release violation (SRV) case 08-CR-00500, concurrently with the

sentence in this case.

/ / /

I.      **Consideration of Section 3553 Factors After Booker**

      A.      **The Sentencing Guidelines After *Booker***

Under the Sentencing Reform Act as modified by *United States v. Booker*, 543 U.S. 220 (2005), this Court must analyze and consider the Guideline factors before imposing sentences in federal criminal cases.  543 U.S. at 259, 261 (noting that Sentencing Reform Act "nonetheless requires judges to take account of the Guidelines together with other sentencing goals"); *see also United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (noting that the "[c]ontinuing duty of district courts to consult the Guidelines is statutory.")  The Sentencing "Commission developed Guidelines sentences using an empirical approach based on data about past sentencing practices, including 10,000 presentence investigation reports."  *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct 558, 567 (2007), citing USSG § 1A1.1, intro. comment., pt. A, ¶ 3.  "The [Sentencing] Commission 'modif[ied] and adjust[ed] past practice in the interest of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'"  *Kimbrough*, 128 S. Ct at 567, citing *Rita v. United States,* 551 U.S. 338, 127 S. Ct 2456, 2464 (2007); *see also United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007) (stating that the Sentencing Guidelines were ". . . drafted by a respected public body with access to the best knowledge and practices of penology").  The Third Circuit in *United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2007), has also spoken to the origin and continued importance of the advisory guidelines:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data.  More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process.  Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case.  Because they have been produced at Congress's direction, they cannot be ignored.

(citations omitted).

**Government's Sentencing Memorandum**                                                              **Page 2**

In *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc), the Ninth Circuit declined to adopt a presumption of reasonableness for appellate review of within-Guideline sentences, but it stated that "normally" a Guideline sentence will not be found unreasonable on appeal.  520 F.3d at 988.  *Carty* also provided a detailed framework for federal sentencing.  This Court must begin by determining the applicable guideline range - this range is a "starting point" and "initial benchmark."  *Carty*, 520 F.3d at 991.  This Court must then ensure that the parties have an opportunity to argue for the sentence that they believe is appropriate.  *Id.*  This Court must also consider Section 3553(a) in conjunction with these arguments.  *Id.*  This Court cannot presume that a Guideline sentence is reasonable and cannot give the Guidelines more or less weight than the other 3553(a) factors.  *Id.*  The sentencing must be an "individualized" determination.  *Id.*  Importantly, in deciding the extent of any proposed departure or variance from the Guideline range, this Court must consider whether the justification is sufficiently compelling to support the degree of the variance.  *Id.*  The greater the variance, the more persuasive the justification should be "because other values reflected in Section 3553(a) - such as, for example, unwarranted disparity" counsel against the variance.  *Id.* at 991-92.  Also importantly, this Court must provide enough of an explanation to enable meaningful appellate review, and this will vary depending upon the complexity of the case.  *Id.* at 992.

> B.     Consideration of the 3553(a) Factors

The applicable Sentencing Guidelines range, while not definitive, provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in Section 3553(a).  *See Cantrell*, 433 F.3d at 1279; *see also Rita*, 551 U.S. 338, 127 S.Ct at 2464 (stating ". . . it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.")  "To comply with the requirements of *Booker*, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a).  This requirement does not necessitate a specific

**Government's Sentencing Memorandum**                                                   **Page 3**

articulation of each factor separately, but rather a showing that the district court considers the statutorily-designated factors in imposing a sentence." *United States v. Nichols*, 464 F.3d 1117, 1125 (9th Cir. 2006), quoting *United States v. Knows His Gun*, 438 F.3d 913, 918 (9th Cir. 2006). In the preceding and following pages of this memorandum, the government has detailed the facts it believes are relevant to defendant's sentencing.

### 1.    Nature and Circumstances of the Offense and History and Characteristics of Defendant

The facts as detailed in the PSR show that Kelly distributed ounce quantities of herion, a dangerous street narcotic for profit during a 6 month period from May to November of 2013. During that time, Kelly made profits of $12,000. His brother Marcus Kelly aided in the distribution of herion by driving Michael Kelly to drug deals for a fee. Marcus admitted that he had no source of income and that Michael paid him $30 - $40 dollars for the 20 drug deals he participated in.

As detailed in the PSR, Kelly falls within Criminal History Category V because of his lengthy criminal history. However, his criminal history is somewhat under represented. Mr. Kelly's criminal history began in 1990 at the age of 18. From age 18 to 30, Kelly sustained 9 criminal convictions that are not reflected in his criminal history calculation. In short, only 5 convictions since Kelly turned 30 form the basis for his criminal history category.

The majority of Kelly's prior convictions involve fraudulent offenses and other crimes associated with driving motor vehicles. His criminal history also includes 2 prior convictions for the possession of crack cocaine in 1991 and 1995 (ages 19 and 23 respectively). However, these offenses don't involve distribution and occurred almost 20 years ago. A review of his criminal history suggests that Kelly is progressing from less serious fraudulent offenses to more dangerous drug offenses and while on federal supervision. Based on Kelly's confession at the time of arrest, it is clear that his decision to distribute heroin occurred after he completed

**Government's Sentencing Memorandum**                                                      **Page 4**

outpatient drug treatment in November of 2012, and before or near the time when he finally

obtained employment about July of 2013.  While the government has reviewed Kelly's prior

psychological report and accepts his condition and his lower intelligence functioning, his current

conduct still warrants punishment commensurate with his criminal history and failure to

complete supervision.

### 2.    Need to Reflect the Seriousness of the Offense

Congress has spoken by establishing mandatory minimum sentences for certain drug

offense.  Here, the plea agreement allows for the government to recommend a 100 month

sentence to be imposed on Kelly.  A sentence of 100 months will send a message to Kelly and

the general community in that a prison sentence is appropriate for those who traffic and

distribute dangerous drugs like herion into the community.  The offense is elevated and more

serious because it was completed while Kelly's conduct was being montitored by the United

States Probation Department.

### 3.    Deterrence of Criminal Conduct

Defendant's willingness to commit this crime while on supervision can be explained in

part by his lower intelligence functioning, but also through his willingness to engage in drug

trafficking on a regular basis for profit.  A sentence of 100 months of imprisonment will have a

specific and general deterrent effect on Kelly and others who engage in drug trafficking.

### 4.    Need to Avoid Unwarranted Disparity in Sentences

A sentence of 100 months also properly accounts for "the need to avoid unwarranted

sentence disparities among defendants with similar records who have been found guilty of

similar conduct."  18 U.S.C. § 3553(a)(6).  Numerous courts have recognized that the guidelines

range serves as a bulwark against sentencing disparity.  *See United States v. Guerrero-Velasquez*,

434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that guidelines "help to maintain

uniformity in sentencing throughout the country"); *United States v. Hunt*, 459 F.3d 1180, 1184

**Government's Sentencing Memorandum**                                          **Page 5**

(11th Cir. 2006) ("The Guidelines . . . are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated defendants") (quoting 18 U.S.C. § 3553(a)(6)); *United States v. Smith*, 445 F.3d 1, 7 (1st Cir. 2006) (noting that "the guideline range . . . is the principal means of complying with" the goal of avoiding unwarranted sentencing disparity).  Moreover, the Ninth Circuit has observed that a sentence consistent with the guideline range is unlikely to be disparate because such a sentence "represents the sentence that most similarly situated defendants are likely to receive."  *United States v. Becerril-Lopez,* 541 F.3d 881, 895 (9th Cir. 2008).

18 U.S.C. § 3553(a)(6) "requires courts to consider sentencing disparities between similarly situated federal defendants," and "does not require district courts to consider sentencing disparities between defendants found guilty of similar conduct in state and federal courts." *United States v. Ringgold*, 571 F.3d 948, 951 (9th Cir. 2009).  Therefore, the Ninth Circuit has stated that "a district court judge does not abuse his discretion in declining to consider under § 3553(a)(6) the sentence a defendant would have received for the same conduct in state court." *Id.* at 952.

In this case, a sentence of 100 months of imprisonment would address all of the facts in this case when taken in consideration with the Section 3553(a) factors.  With respect to similarly situated defendants, look no further than defendant's co-defendant and identical twin brother, Marcus Kelly.  Marcus served a full sentence for a supervised release violation and was recently sentenced to a mandatory minimum 60 months prison sentence – essentially a consecutive sentence since the SRV sentence was completed at the time of sentencing in his drug case.  Here, defendant Michael Kelly's criminal history is under represented yet he still falls within criminal history category V – like his brother Marcus.  Both are subject to a mandatory minimum 5 year prison sentence.  However, the difference between the brothers is one of culpability.  Michael is

**Government's Sentencing Memorandum**                                                                 **Page 6**

the more responsible heroin distributor and his higher culpability is reflected in relevant conduct

distribution quantity.  Michael Kelly's relevant conduct is at least 1 Kilogram but not more than

3 Kilograms of heroin – resulting in a base offense level of 32.  Marcus Kelly's relevant conduct

is at least 100 but less than 400 grams of herion resulting in a base offense level of 26.  By

imposing a sentence of 100 months of imprisonment, the Court can insure that there will be no

disparity between Kelly's sentence and that of his brother Marcus Kelly, or any other similarly

situated defendant.

## II.    CONCLUSION

For the reasons set forth above, including consideration of the advisory sentencing

guideline range and Section 3553(a) factors, the government respectfully requests that the Court

sentence defendant Kelly to 100 months prison followed by 3 years of supervised release.  The

sentence is warranted in this case and would provide a sentence that is sufficient, but not greater

than necessary, pursuant to 18 U.S.C. § 3553(a).  *See United States v. Tankersley*, 537 F.3d

1100, 1114-15 (9th Cir. 2008) ("The district court is charged with the responsibility of imposing

a sentence that is "sufficient, but not greater than necessary") (citations omitted).

DATED this 14th day of November 2014.

> Respectfully submitted,
> S. AMANDA MARSHALL
> United States Attorney
> District of Oregon
>
> *s/Kemp L. Strickland*
> KEMP L. STRICKLAND  OSB #96118
> Assistant United States Attorney